NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit-Rochester Family Division
No. 2020-0125


IN THE MATTER OF ALLI MORRIS AND DUSTIN MORRIS

Submitted: April 28, 2021
Opinion Issued: October 19, 2021


Alli Morris, the petitioner, filed no brief.


Bedard & Bobrow, PC, of Eliot, Maine (David J. Bobrow on the brief), for the respondent.


HANTZ MARCONI, J.  The respondent, Dustin Morris (Father), appeals a decision of the Circuit Court (Alfano, J.) awarding "custody and school placement" of his biological child (Child) to the petitioner, Alli Morris, Father's ex-wife and Child's stepmother (Stepmother).  See RSA 461-A:6, V (2018).  Stepmother did not file a brief or memorandum of law in this appeal; we proceeded with, and now decide, this case on Father's brief only.  Because we conclude that the circuit court erred in applying solely a best-interests-of-the-child standard to determine the parental rights and responsibilities between Father and Stepmother with respect to Child, we reverse and remand.

I

The relevant facts follow.  Child was born in 2005 to Father and Child's biological mother, who passed away in 2008.  Father and Stepmother began a

romantic relationship in 2010 and married in 2013.  The parties separated in 2016 and later filed for divorce, necessitating the allocation of parental rights and responsibilities between them with respect to their three, shared biological children, and with respect to Child, whom Stepmother has "raised . . . as her child" but has not adopted.  On July 3, 2019, a final hearing was held to, in part, determine the parenting plan for Child.  Father and Stepmother were each represented by counsel, and a guardian ad litem represented the children's interests.  At the time of the hearing, Father and Stepmother lived approximately an hour apart and in different school districts in New Hampshire.

Following the hearing, the circuit court issued an order in which it found that permitting Child "to live with Father and to go to school in his school district [is] not in the child's best interests."  "This is based on the fact," the court reasoned, "that Father travels extensively for work, and would not be physically present for weeks at a time to parent."  The court found that Father continues to seek out-of-state work, that Stepmother "does not have the resources to take [Child] to school in Father's school district" given the distance from her home, and that "even if Father's girlfriend would be available when Father is traveling, which does not appear to be the case, then the child should be with [Stepmother]" in light of Child's relationship with her and the lack of evidence regarding Child's relationship with Father's girlfriend.

Although the court made findings critical of Father's "effective[ness]" as a parent, the record does not reflect that Father was found to be an unfit parent pursuant to RSA chapter 169-C (2014 & Supp. 2020) or RSA chapter 170-C (2014 & Supp. 2020).  The circuit court acknowledged that Child "wants more time with his Father," and ordered that Child "spend every weekend with his Father that his Father is physically available to parent him," but otherwise, that Child would have "the same parenting schedule as the other children, which is every other weekend" with Father, and "the remaining parenting time" with Stepmother.  The court further stated that "[t]he parties are encouraged to allow [Child] to be with his Father as often as possible, but are ordered to have [Child] attend school in [Stepmother's] school district."

Father moved for reconsideration, arguing that the circuit court erred in "awarding custody" of Child to Stepmother based solely upon a best-interests standard.  He argued that the use of such a standard was "impermissible" because Stepmother is not Child's biological or adoptive mother, and he is Child's biological father and is presumed to be a fit parent, acting in Child's best interests.  The circuit court denied Father's motion, explaining that "New Hampshire law provides that the court in a divorce may award custody to a step-parent in preference even to a natural parent based on the best interests of the child."  (Citing RSA 461-A:6, V.)  Father filed subsequent motions in August and September of 2019, which the circuit court denied as untimely.  This appeal followed.

2

## II

The circuit court has wide discretion in matters involving parental rights and responsibilities under RSA 461-A:6 (Supp. 2020), and we will not overturn its determination except when there has been an unsustainable exercise of discretion. See In the Matter of Bordalo & Carter, 164 N.H. 310, 313 (2012); see also RSA 461-A:20 (2018) ("Any provision of law that refers to the 'custody' of minor children shall mean the allocation of parental rights and responsibilities as provided in this chapter."). However, we apply a de novo standard of review both to the constitutionality of a statute and to the circuit court's application of the law to the facts. See Bordalo, 164 N.H. at 314.

RSA 461-A:6, V specifically pertains to determinations of parental rights and responsibilities as to a stepparent or grandparent, and provides:

> If the court determines that it is in the best interest of the children, it shall in its decree grant reasonable visitation privileges to a party who is a stepparent of the children or to the grandparents of the children pursuant to RSA 461-A:13. Nothing in this paragraph shall be construed to prohibit or require an award of parental rights and responsibilities to a stepparent or grandparent if the court determines that such an award is in the best interest of the child.

RSA 461-A:6, V. This statutory language was also at issue in Bordalo. In that case, we concluded that solely a best-interests-of-the-child standard could not be constitutionally applied to determinations of parental rights and responsibilities between a grandparent and a fit, natural or adoptive parent. Bordalo, 164 N.H. at 312, 314, 316. We hold that this conclusion applies equally to determinations of parental rights and responsibilities between a stepparent and a fit, natural or adoptive parent, as there is no constitutional or statutory basis to differentiate between grandparents and stepparents in this context.

"It is well-established that parents have a fundamental liberty interest in raising and caring for their children." Id. at 314; see Troxel v. Granville, 530 U.S. 57, 66 (2000) (plurality opinion); see also U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 2. We have adopted the Troxel plurality's ruling that fit parents are presumed to act in the best interest of their children. Bordalo, 164 N.H. at 314. "Provided that a parent is fit, there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. (quotation omitted).

"Moreover, the fundamental liberty interest of parents in the care, custody and management of their children does not evaporate simply because

3

they have not been model parents." Id. (quotation and alterations omitted). "Even though their parenting skills are less than ideal, biological and adoptive parents are presumed to be fit parents until they are found to be unfit under either RSA chapter 169-C (abuse and neglect proceedings) or RSA chapter 170-C (termination of parental rights)." Id.

It was against this constitutional backdrop that we considered RSA 461-A:6, V in Bordalo to ultimately conclude that "[a]pplying solely a best-interests standard to adjudicate disputes concerning parental rights and responsibilities between a grandparent and a fit natural or adoptive parent does not comport either with Troxel, 530 U.S. at 66, or our precedents recognizing parents' fundamental liberty interest in raising and caring for their children." Bordalo, 164 N.H. at 314, 316; see In the Matter of R.A. & J.M., 153 N.H. 82 (2005) (plurality opinion) (examining RSA 458:17, VI (2004) (repealed 2005), the predecessor to RSA 461-A:6, V). As we discussed in Bordalo, three separate opinions were issued in R.A., the court being divided both as to whether RSA 458:17, VI was constitutional on its face and, in light of the majority's judgment that it was, what standard should be employed to assess the constitutionality of the statute as applied in individual cases; however, all five justices did agree that the statute could not be constitutionally applied simply by using a best-interests standard. Bordalo, 164 N.H. at 315-17. Because stepparents and grandparents are the two classes of third parties identified in RSA 461-A:6, V, and neither a stepparent nor a grandparent is a natural or adoptive parent, this same constitutional backdrop is implicated by disputes concerning parental rights and responsibilities between a stepparent and a fit, natural or adoptive parent. See id. at 314-16; see also RSA 461-A:6, V (pertaining to determinations of parental rights and responsibilities that likewise involve grandparents and stepparents); In the Matter of Jeffrey G. & Janette P., 153 N.H. 200, 203-04 (2006) (explaining grandparents and stepparents are the "only two classes of third parties" identified in RSA 458:17, VI, the predecessor to RSA 461-A:6, V); cf. RSA 461-A:13 (2018) (as referenced by RSA 461-A:6, V, prescribing special rules for awarding visitation to a grandparent).

The record in this case is clear that Father is Child's biological parent, that Father has not been found to be unfit under RSA chapter 169-C or RSA chapter 170-C, and that Stepmother is Child's stepparent, not his natural or adoptive parent. Adhering to our decision and reasoning in Bordalo, we conclude that the circuit court erred in applying solely a best-interests-of-the-child standard to determine parental rights and responsibilities between Father and Stepmother with respect to Child. See Bordalo, 164 N.H. at 314-17. Therefore, we reverse the circuit court's award of "custody and school placement" of Child to Stepmother.

We have previously discussed standards that may be constitutionally appropriate to use in allocating parental rights and responsibilities between a

grandparent or a stepparent and a fit, natural or adoptive parent.  See id. at 315-17 (discussing the three separate opinions issued in R.A., in recognition of the fact that, beyond the established consensus that using solely a best-interests standard is inappropriate, it is unsettled in New Hampshire what the appropriate constitutional standard is); R.A., 153 N.H. at 101 (Broderick, C.J.) (prescribing, in that case's controlling opinion, a four-part test — subsequently called the Broderick test — and holding that "an award of custody to a stepparent or a grandparent over the objection of a fit natural or adoptive parent is not unreasonable or unduly restrictive of parental rights only if" that test is proven by clear and convincing evidence); R.A., 153 N.H. at 110 (Nadeau and Galway, JJ., concurring in part and dissenting in part) (disagreeing that the Broderick test was the constitutionally appropriate standard and prescribing an in loco parentis test in its place); R.A., 153 N.H. at 111-12 (Dalianis and Duggan, JJ., dissenting) (finding that neither the proffered Broderick test nor the in loco parentis test comported with the State and Federal Constitutions, reasoning that there is no authority to award custody to a stepparent or grandparent, under any standard, when the parent at issue has not been found to be unfit); see also Jeffrey G., 153 N.H. at 204 (Galway, J.) (opining, with Chief Justice Broderick's support, that "a grandparent or stepparent who has established in loco parentis status" may obtain custody of a child over a biological or adoptive parent); Jeffrey G., 153 N.H. at 205 (Dalianis and Duggan, JJ., dissenting) (reiterating they "believe that no relative or other third party can obtain custody of a child over fit biological or adoptive parents" (emphasis omitted)).  However, no standard has received sufficient support to afford it precedential weight in New Hampshire.

Nor is there a precedential opinion evaluating how our previously contemplated constitutional standards, which were outlined in R.A. in response to a challenge that RSA 458:17, VI was facially unconstitutional, should be applied to determinations of parental rights and responsibilities under its successor, RSA 461-A:6, V.  In Bordalo, we reviewed whether the trial court erred in finding that the Broderick test was satisfied in allocating parental rights and responsibilities under RSA 461-A:6, V, but specifically noted that no party argued that the trial court's use of the Broderick test was itself error.  Bordalo, 164 N.H. at 315, 317-19.  We also specifically noted, in reviewing the trial court's application of the four-part Broderick test, that Mother had not challenged the trial court's interpretation that RSA 461-A:6, V allowed it to "award parental rights and responsibilities to a stepparent or grandparent in appropriate circumstances even when the court has not found the parent who is denied such rights and responsibilities to be unfit."  Id. at 315.  In R.A., the alternative in loco parentis test was contemplated as the constitutionally appropriate standard to use "when applying RSA 458:17, VI (or, its successor, RSA 461-A:6 (Supp. 2005))," but only two of the five justices endorsed that reasoning.  R.A., 153 N.H. at 110 (Nadeau and Galway, JJ., concurring in part and dissenting in part).

5

On appeal, Father maintains that the correct standard to apply is the Broderick test and that the evidence was insufficient to meet this test. Although Stepmother has not filed a brief in this court, in her objection to Father's motion to reconsider filed in the trial court, she argued that the record established that the Broderick test was satisfied. On this briefing and record before the circuit court, we will assume without deciding that, for purposes of this appeal, the Broderick test is the correct standard to apply. Under the Broderick test, an award of custody to a stepparent or grandparent, over the objection of a fit natural or adoptive parent, is not unreasonable or unduly restrictive of parental rights only if the petitioning party can show by clear and convincing evidence that:

> (1) the custody award would specifically be in the child's best interest because of a significant psychological parent-child relationship; (2) . . . the family is already in the process of dissolution; and (3) there is some additional overriding factor justifying intrusion into the parent's rights, such as a significant failure by the opposing parent to accept parental responsibilities[; and (4)] the custody award [is] necessary for the State to enforce its compelling interest in protecting the child from the emotional harm that would result if the child were forced to leave the significant psychological parent-child relationship between the child and the stepparent or grandparent.

R.A., 153 N.H. at 101.

For purposes of this analysis, we will assume that the first and second Broderick criteria have been met. On this record, we cannot conclude, however, that the evidence was sufficient to establish either "some additional overriding factor justifying intrusion into [Father's] rights" or that the award to Stepmother was "necessary for the State to enforce its compelling interest in protecting [Child] from the emotional harm that would result if [Child] were forced to leave the significant psychological parent-child relationship" with Stepmother. See id. We, therefore, conclude that the evidence was insufficient, as a matter of law, to satisfy the Broderick test.

Accordingly, we reverse the parenting plan decision of the trial court and remand for further proceedings consistent with this opinion.

So ordered.

MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

6